UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA WEBB, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S COMPANY,<br><br>Defendant. | Case No.: 19-CV-1587-CAB-WVG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Doc. No. 9] |

This matter comes before the Court on Defendant's motion for judgment on the pleadings. [Doc. No. 9.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendant's motion is granted.

**I.    BACKGROUND**[1]

Plaintiff Christina Webb filed this putative consumer class action complaint against Defendant Trader Joe's in the Superior Court of California, County of San Diego, on July

---

[1] The Court is not making any findings of fact, but rather summarizing the relevant allegations of Plaintiff's complaint.

1

10, 2019 [Doc. No. 1-2], and Defendant removed the action to this Court on August 23, 2019. [Doc. No. 1.] The complaint asserts claims for violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; violation of California's Unfair Competition Law (the "UCL"), California Business & Professions Code § 17200 *et seq.*; violation of California's False Advertising Law (the "FAL"), California Business & Professions Code § 17500 *et seq.*; Breach of Express and Implied Warranties; Theft by False Pretenses; and Unjust Enrichment/Money Had and Received. [Doc. No. 1-2 at ¶¶ 120–251.[2]]

Defendant markets, sells, and distributes a variety of Trader Joe's branded raw poultry products, including the "All Natural Boneless Chicken Breasts," "All Natural Chicken Thighs," and "All Natural Chicken Wings" (the "Products."). [*Id.* at ¶ 6.] According to the complaint, the Products are false and misleading because the Products claim to contain up to 5% retained water when they actually contain far greater amounts of retained water (as much as 16%) for which California consumers are unlawfully charged. [*Id.* at ¶ 7.] Plaintiff alleges she purchased the Products from several Trader Joe's locations in San Diego County, California, which contained excess retained water above the amount the Products declared and therefore Plaintiff paid more for the products than they were worth. [*Id.* at ¶ 12.] After sampling and analyzing Products offered for sale at supermarkets in Northern California, Plaintiff found that the Products were routinely economically adulterated with excess retained water far greater than that declared on the Product labels. [*Id.* at ¶ 13.]

Plaintiff seeks to represent a Nationwide class and California sub-class of consumers who purchased the Products during the class period. [*Id.* at ¶¶ 118, 119.] The complaint's prayer for relief requests, among other things, an order enjoining Defendant to cease packaging, advertising, and selling the Products; re-label or recall all existing Products;

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

conduct a corrective advertising campaign; and an award of restitution and damages for Plaintiff and the class. [*Id.* at ¶ 15.]

## II. LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed but within such time as not to delay the trial. FED. R. CIV. P. 12(c). A motion for judgment on the pleadings must be evaluated under the same standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997). Thus, the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) applies to a motion for judgment on the pleadings. *Lowden v. T–Mobile USA, Inc.*, 378 Fed. Appx. 693, 694 (9th Cir. 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 544)). When deciding a motion for judgment on the pleadings, the Court assumes the allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). A judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

### B. Preemption

The Supremacy Clause of the Constitution empowers Congress to make federal laws that preempt state law. *Von Saher v. Norton Simon Museum of Art in Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (quoting *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th

Cir. 2000), abrogated on other grounds)). Federal preemption can be either express or implied. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982). Express preemption exists when a statute explicitly addresses preemption. *See Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009).

A court's preemption analysis is guided by two principles. "First, there is a presumption against supplanting 'the historic police powers of the States' by federal legislation 'unless that [is] the clear and manifest purpose of Congress.'" *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996)). As a result, express preemption clauses should be narrowly construed. *Gordon*, 575 F.3d at 1060. Second, Congress's purpose "'is the ultimate touchstone in every preemption case.'" *Gordon*, 575 F.3d at 1060 (quoting *Medtronic*, 518 U.S. at 485). Thus, courts must analyze the language of the statute and the overall statutory scheme. *Gordon*, 575 F.3d at 1060.

### III. REQUEST FOR JUDICIAL NOTICE

At the motion to dismiss stage a court may consider materials incorporated into the complaint or matters of public record, without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg.*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted); *see also* Federal Rules of Evidence 201(b): "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Defendant requests the Court take judicial notice of a copy of the label of Defendant's "All Natural Chicken" Product. [Doc. No. 10.] Plaintiff requests the Court take judicial notice of a public document from the United States Department of Agriculture Food Safety and Inspection Service titled "Chicken from Farm to Table" available online, an Order Sustaining Demurrer entered on January 29, 2018, and an Order after hearing on Defendant's Demurrer entered on October 9, 2018, in *Wong v. Vons, et. al.*, Case No. RG17865531 (Superior Court of California, County of Alameda). [Doc. Nos. 12-1, 13.]

Neither party has opposed the others' requests or challenged the documents' authenticity. FRE 201(b)(2). Accordingly, the Court takes judicial notice of both Plaintiff's and Defendant's exhibits.

## IV. DISCUSSION

Defendant contends that all of Plaintiff's claims are expressly preempted under the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451 *et seq.*, because Defendant has complied with federal requirements and the Products' label has been pre-approved by the U.S. Department of Agriculture ("USDA.").

Congress enacted the PPIA to prevent the interstate distribution of adulterated and misbranded poultry. 21 U.S.C. § 452. The PPIA prohibits the sale of products with false or misleading labeling or marking. 21 U.S.C. §§ 457(c); *see also Del Real, LLC v. Harris*, 636 Fed.Appx. 956, 957 (9th Cir. 2016) ("[W]e have previously interpreted the legislative history of the . . . PPIA as clearly show[ing] the intent of Congress to create a uniform national labeling standard."). Pursuant to the PPIA, the USDA's Food Safety and Inspection Service ("FSIS") inspects and approves product labels. 9 C.F.R. § 412.1(a). A label must be approved before products bearing that label are sold in interstate commerce. *Id*.

The PPIA contains an express preemption provision that preempts state law if (1) the state law imposes marking, labeling, packaging, or ingredient requirements; and (2) these requirements are "in addition to, or different than" the requirements imposed under federal law. *See* 21 U.S.C. § 467e (PPIA); *see also Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, *5 (N.D. Cal. July 25, 2013) (dismissing UCL, FAL, and CLRA claims against Campbell Soup's Natural Chicken Tortilla soup as preempted under the PPIA and FMIA). State statutory and common law can impose requirements that satisfy the first prong. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008). With respect to the second condition, a state requirement is additional or different than federal requirements if it is not "equivalent" or "parallel." *Riegel*, 552 U.S. at 330; *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005). "In conducting a preemption analysis, a

5

19-CV-1587-CAB-WVG

court must consider the theory of each claim and determine whether the legal duty that is the predicate of that claim is inconsistent with federal law." *Metrophones Telecomm'ns, Inc. v. Global Crossing Telecomm'ns. Inc.*, 423 F.3d 1056, 1075 (9th Cir. 2005) (internal citations omitted). The question then is whether the state law requirements are additional to or different than the federal requirements.

Water retained in raw poultry as an unavoidable consequence of processing associated with food safety requirements is referred to as "retained water." 9 C.F.R. § 441.10(a). Under the federal regulations, raw poultry is not permitted to retain water unless the establishment preparing the raw poultry demonstrates to FSIS, with data collected in accordance with a written protocol, that any water retained is an unavoidable consequence. *See id*. Raw poultry that retains water must bear a statement on the label stating the maximum percentage of water that may be retained (e.g., "up to X% retained water"). *See* 9 C.F.R. § 441.10(b). The establishment must maintain on file and available to FSIS its written data-collection protocol which must explain how data will be collected and used to demonstrate the amount of retained water in the product. *See* 9 C.F.R. § 441.10(c)(1). The establishment must notify FSIS as soon as it has a new or revised protocol available for review and within 30 days FSIS may object to or require the establishment to make changes in the protocol. *See* 9 C.F.R. § 441.10(c)(2).

The regulations also provide for expected elements of a protocol for gathering water retention data which includes: a purpose statement, type of washing and chilling system used by the establishment, configuration and any modifications of the chiller system components, special features in the chilling process, description of variable factors in the chilling system, standards to be met by the chilling system, testing methods to be employed, reporting of data and evaluation of results, and conclusions. *See* 9 C.F.R. § 441.10(d). Each of these expected elements are explained in further detail within the statute. *Id*. The federal regulations impose no further requirements and do not set a specific limit on the

amount of retained water that is allowed.[3]

Plaintiff contends her claims are not preempted because the PPIA contains an express savings clause providing for concurrent federal-state enforcement and because the requirements her state law claims seek to enforce are equivalent to the federal requirements. The Court disagrees.

As applied here, the PPIA's preemption provision preempts Plaintiff's state law claims. Plaintiff's claims are all centered around the theory that Defendant's Products are misleading and mislabeled due to the Products containing retained water greater than that which is claimed on the Products' labels according to Plaintiff's own testing of the Products. Defendant has fully complied with the federal requirements to make the "Up to 5% Retained Water" claim on its labels by demonstrating to the FSIS with data collected in accordance with the above-mentioned protocol, that the Products contain up to 5% of retained water as an unavoidable consequence. Defendant must have included, among several other requirements, a report of such data and an evaluation of its results. In turn, the FSIS must have reviewed this data and approved the Products' label in order to permit Defendant to place its retained water claim upon its Products for sale in interstate commerce. After review, the FSIS could have objected to Defendant's protocol, or required Defendant to make changes, but the fact that the Products are placed for sale lends to the conclusion that no such objection or request was made.

Plaintiff's state law claims would necessarily require additional requirements that are not equivalent to the PPIA. As Defendant has fully complied with the federal requirements under the PPIA and the FSIS has approved the Products' label, the label claims cannot be construed, as a matter of law, as false or misleading. *See Barnes*, 2013 WL 5530017 at *5 (N.D. Cal. July 25, 2013). Receiving pre-approval of labels must be

---

[3] The federal regulations previously set a specific limit on the amount of retained water that is allowed, but this requirement was removed after the holding in *Kenney v. Glickman*, 96 F.3d 1118 (8th Cir. 1996), which held that such regulation was without adequate basis.

given preemptive effect. *See Reigal v. Medtronic, Inc.*, 552 U.S. 312, 321 (2008) (holding that federal law preempted plaintiff's state claims because the FDA provided pre-approval of the pharmaceutical label in dispute); *see also Meaunrit v. ConAgra Foods Inc.*, No. C 09–02220 CRB, 2010 WL 2867393, at *7 (N.D. Cal. July 20, 2010) (holding that defendant did not use false and misleading labels because defendant's chicken pot pies received pre-approval by the USDA and FSIS). Furthermore, the FSIS states it reviews labels for approval in their entirety[4] and does not pre-approve the data provided by establishments or the water-retention limits the provided data purport to justify because to do so would "contradict its regulatory policy which is opposed to command-and-control regulation." *See* 66 FR 1750-01 at 1755.

Permitting Plaintiff to assert her state law claims would effectively impose a labeling requirement–and undermine federal agency authority–because Defendant would have to satisfy additional requirements under state law after already having fully complied with applicable federal law. Any liability Plaintiff seeks to attach based on her state law claims would unavoidably impose marking, labeling, or packaging requirements upon Defendant *in addition to, or different than* the federal regulations that Defendant has already followed under the PPIA. Defendant would be required to either provide additional corroborated data to the FSIS, complete further testing on its Products, or satisfy some other requirement that is not mandated under the PPIA because Plaintiff conducted her own testing of the Products in which she found that the retained water was greater than what the Products claim. Plaintiff's own testing, if anything, could indicate that the FSIS may not have properly substantiated Defendant's data-collection protocol or that the data-collection protocol Defendant provided to the FSIS was somehow faulty. Plaintiff's state law claims are not predicated on such grounds. Furthermore, even if Plaintiff's own testing is accurate,

---

[4] USDA Questions and Answers, Question 15, available at https://www.fsis.usda.gov/wps/portal/fsis/topics/regulatory-compliance/labeling/labeling-policies/faq-generic-labeling

8

only the federal government is vested with the authority to enforce the PPIA. *See* 21 U.S.C. § 467c ("All proceedings for the enforcement or to restrain violations of this chapter shall be by and in the name of the United States."). Accordingly, Plaintiff's state law claims are expressly preempted under the PPIA.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is **GRANTED** and Plaintiff's complaint is **DISMISSED with prejudice**.[5]

It is **SO ORDERED**.

Dated: October 29, 2019

Hon. Cathy Ann Bencivengo
United States District Judge

---

[5] The Court does not find that any amendment to this claim could possibly cure the deficiency as Plaintiff's claims are expressly preempted. As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed.R.Civ.P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. ServWell Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)).